**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-00545-CMA-KMT

RASHANNA MARSHALL,

    Plaintiff,

v.

EXELIS SYSTEMS CORPORATION, and
LAWRENCE LINDLOFF,

    Defendants.

---

**ORDER DENYING DEFENDANT EXELIS' MOTION TO DISMISS
PLAINTIFF'S OUTRAGOUS CONDUCT CLAIM**

---

In this employment discrimination action, Plaintiff Rashanna Marshall alleges that Defendants discriminated against her on the basis of race during her employment on Bagram Airfield, the largest military base in Afghanistan. This matter is before the Court on Defendant Exelis Systems Corporation's ("Exelis") Motion to Dismiss Plaintiff's 42 U.S.C. § 1981 and Outrageous Conduct Claims. (Doc. # 47.) The Court previously granted in part that motion and dismissed Marshall's Section 1981 claims. (Doc. # 81.) For the reasons discussed below, the Court denies the balance of the motion, which asks it to dismiss Marshall's outrageous conduct claim.

## I. BACKGROUND[1]

Marshall, an African-American female, worked for Exelis for five years, starting in 2006.  Exelis is a Colorado corporation with its principal place of business in Colorado Springs Colorado, but employs over 7,800 employees worldwide and performs numerous contracts for the United States government related to defense services.  During her employment, Marshall, a United States citizen and resident of Texas, worked at Bagram Airfield in Afghanistan.  During all times relevant to this action, Lindloff was a resident of Iowa and a United States citizen.  (Doc. # 31 at 1-2.)

Marshall alleges that in the summer of 2011, she discovered that Defendants were discriminating against her and her African-American co-workers.  She alleges that Defendants passed her and other African Americans over for job opportunities and provided them less favorable terms and conditions of employment than were provided to their similarly situated non-African-American counterparts.  Marshall reported her concerns to her supervisor, Lindloff, and when he refused to remedy the problems, she reported her concerns to Exelis human resources and upper management.  (*Id.* at 1-2, 7-8.)  Hours after meeting with upper management to discuss her concerns regarding race discrimination, Lindloff retaliated against Marshall by giving her a disciplinary write-up, in part because she "accused him of being a racist . . . ."  (*Id.* at 8.)  Marshall then contacted Exelis's human resources department located in Colorado Springs and reported that "Exelis was discriminating against her and others on the basis of race,

---

[1] Unless otherwise noted, the following facts are allegations from Plaintiff's Amended Complaint (Doc. # 31) and are deemed true for purposes of the instant motion.

and that she had been written up for expressing her opposition to race discrimination."
(*Id.*)  Marshall contacted human resources a second time to discuss her concerns of discrimination and retaliation.  (*Id.*)

On November 9, 2011, Marshall began to experience chest pains.  She sought treatment at an on-base medical center, where a paramedic placed Marshall on bed rest pending further tests.  The paramedic wrote a letter informing Exelis of Marshall's condition.  Lindloff and another employee contacted the medical center to attempt to verify the veracity of this letter and demanded information on Marshall's medical condition.  (*Id.* at 9.)

On November 11, 2011, Lindloff fired Marshall.  Following her termination, Lindloff and another Exelis employee attempted to obtain access to Marshalls' medical records in an effort to provide a *post hoc* justification for her termination; however, medical employees refused to provide that information.  (*Id.* at 8-12.)

Plaintiff filed the instant action, alleging race discrimination and retaliation under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as well as claims of outrageous conduct and intentional interference with contract and/or prospective business advantage under Colorado law.  (Doc. # 31, at 13-23.)  The Court previously granted in part Exelis's motion to the extent it asked for dismissal of Marshall's § 1981 claims.  (Doc. # 81.)  The Court now addresses the balance of Exelis's motion, in which it asks the Court to dismiss Marshall's Colorado state law claim for outrageous conduct.  (Doc. # 47.)

## II. DISCUSSION

Defendants move to dismiss Marshall's outrageous conduct claim, arguing that the claim fails as a matter of law because (1) "Colorado choice-of-law rules preclude the application of Colorado outrageous conduct tort law to govern the parties' relationship in Afghanistan"; and (2) "Exelis's due process rights would be violated if Colorado tort law applied here." (Doc. # 47 at 6.) The Court will address each contention in turn.

### A.    CHOICE-OF-LAW ANALYSIS

Federal courts exercising supplemental jurisdiction apply the substantive law of the forum state, including its choice-of-law rules. *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999). In tort cases, such as this one, Colorado's choice-of-law standard is the "most significant relationship" test, as articulated in the Restatement (Second) of the Conflict of Laws §§ 6, 145, 171 (1971) (the "Restatement"). *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 508 (Colo. 2007). In applying that test, the Court analyzes the following contacts:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Restatement § 145(2). Such contacts "are to be evaluated according to their relative importance with respect to the particular issue." *Id.* Further, § 145(2) requires the Court to analyze the following factors listed in § 6 of the Restatement:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,

      (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
      (d) the protection of justified expectations,
      (e) the basic policies underlying the particular field of law,
      (f) certainty, predictability and uniformity of result, and
      (g) ease in the determination and application of the law to be applied.

The weight these factors carry often "var[ies] in importance and in application depending upon the field of law and the particular issue under consideration." *Sabell v. Pac. Intermountain Express Co.*, 536 P.2d 1160, 1164 (Colo. App. 1975). In cases where the primary purpose of the tort rule is to deter wrongful conduct, the place where the conduct occurred may be more important than in other cases. *See* Restatement § 145, cmts. c, e. Additionally, "when the injury was caused by an act done in the course of the relationship, the place where the relationship is centered" should be considered. *See id.* § 145, cmt. e.

      Exelis argues that Afghanistan law applies and therefore, the Court should dismiss Marshall's outrageous conduct claim, which sounds in Colorado law. Although Marshall's injuries and the conduct causing the injuries occurred in Afghanistan, the Court finds that on this particular set of facts, Colorado law applies. Marshall, a citizen of the United States, worked for Exelis, a Colorado corporation with its principal place of business in Colorado. Exelis assigned Marshall to work on a United States military base in Afghanistan. When she believed she was retaliated against for reporting discriminatory conduct, Marshall contacted human resources employees in Colorado. Moreover, other courts have declined to apply foreign law in cases involving injuries that occurred outside of the United States because plaintiffs face accessibility issues. *See Rux v. Republic of Sudan*, 495 F. Supp. 2d 541, 558 (E.D. Va. 2007), *abrogated on*

*other grounds by*, 07-1835, 2009 WL 9057606 (4th Cir. July 4, 2009) (declining to apply Yemen or Sudan laws in case involving an act of terrorism against an American warship flying the flag of the United States in which seventeen U.S. nationals were killed, because "[t]he courts of Yemen and Sudan are plainly inaccessible to Plaintiffs, all of whom are themselves U.S. nationals and reside in the United States.") Likewise, courts have determined that domestic law applies to tort claims for injuries sustained in Afghanistan.[2]

Notwithstanding the determination that Colorado law applies, the Court notes that Exelis asks for relief to which it is not entitled. In a typical choice-of-laws scenario, a court determines what law applies, then applies the chosen law to determine whether a plaintiff has stated a claim for that cause of action. *See, e.g., Gloston v. ITT Federal Servs. Int'l Corp.*, 06-cv-02168-PSF-BNB, 2007 WL 18304086, (D. Colo. June 21, 2007). Conversely, here, Exelis argues that Afghanistan, rather than Colorado, Iowa, or Texas, has the most significant relationship, but then simply asks this Court to dismiss Marshall's claim. Other than a general reference to Afghanistan's Labor Code, Exelis offers no reference to Afghanistan law nor does it demonstrate that an outrageous

---

[2] *See, e.g., Burke v. Air Serv Int'l, Inc.*, 775 F. Supp. 2d 13, 18 (D.D.C. 2011) *aff'd*, 685 F.3d 1102 (D.C. Cir. 2012) (District of Columbia applies in action to recover damages where plaintiff was injured in security detail because there is no conflict between D.C., Florida, New Jersey, and Virginia law); *Berry v. WorldWide Language Res., Inc.*, 716 F. Supp. 2d 34, 53 (D. Me. 2010) (applying Maine law to intentional infliction of emotional distress claim that arose during plaintiff's employment in Afghanistan); *see also Dammarell v. Islamic Republic of Iran*, CIV.A.01-2224JDB/JMF, 2006 WL 2382704 (D.D.C. Aug. 17, 2006) *adopted*, CIV.A.01-2224(JDB), 2006 WL 2583043 (D.D.C. Sept. 7, 2006) and *supplemented*, CIVA 01-2224 JDBJMF, 2006 WL 2724788 (D.D.C. Sept. 1, 2006) *adopted*, CIV.A.01-2224(JDB), 2006 WL 2583043 (D.D.C. Sept. 7, 2006) (applying domestic law for intentional infliction of emotional distress claims for April 18, 1983 car bombing in Beirut, Lebanon).

conduct or intentional infliction of emotional distress claim is not recognized in Afghanistan.  Instead it cites generally to Afghanistan's Labor Code and asserts that "Afghanistan already regulates the employment relationship and employers' access to employees' medical records."  (Doc. # 47 at 8.)  Moreover, while not addressed by either party, it is questionable whether this is sufficient notice to the Court for application of foreign law, pursuant to Fed. R. Civ. P. 44.1.  *See Harris v. Kellogg, Brown & Root Servs., Inc.*, 796 F. Supp. 2d 642, 651-52 (W.D. Pa. 2011) ("Where parties fail to satisfy either burden the court will ordinarily apply the forum's law."); *see also Mutual Serv. Ins. V. Frit Indus.,* 358 F.3d 1312, 1321 (11th Cir. 2004) ("The district court is not required to conduct its own research into the content of foreign law if the party urging its application declines to do so.").  The Court finds that Colorado law applies to Plaintiff's outrageous conduct claim.

**B.    DUE PROCESS**

Next, Exelis argues that its due process rights would be violated by applying the laws of any state except Afghanistan.  The Due Process Clause of the Constitution provides modest restrictions on the application of forum law.  *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 307-08 (1981) (plurality opinion).  These restrictions require that "for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interest, such that choice of its law is neither arbitrary nor fundamentally unfair."  *Id.* at 312-13.

As with the conflict-of-laws analysis, the Court finds that application of Colorado law does not offend Exelis's due process rights. Exelis is a Colorado corporation with its principal place of business in Colorado Springs. As in *Allstate*, by virtue of Exelis's presence in Colorado, it "can hardly claim unfamiliarity with the laws of the host jurisdiction and surprise that the state courts might apply forum law to litigation in which the company is involved." *Id*. Moreover, Marshall contacted human resources employees in Colorado to report her belief that she was being discriminated and retaliated against. In the aggregate, these contacts are sufficient to create state interest in litigating this claim under Colorado law and that choice of law is neither arbitrary nor fundamentally unfair.

### III. CONCLUSION

Accordingly, it is ORDERED that Defendant Exelis Systems Corporation's Motion to Dismiss Plaintiff's 42 U.S.C. § 1981 and Outrageous Conduct Claims (Doc. # 47) is DENIED IN PART with respect to its arguments regarding Plaintiff's outrageous conduct claim.

DATED:  August __26__, 2014

BY THE COURT:

*Christine M. Arguello*

_____
CHRISTINE M. ARGUELLO
United States District Judge